**In re F. H. McGRAW AND COMPANY.**

**No. 30869 WK.**

United States District Court,
E. D. Pennsylvania.

July 25, 1979.

Lewis H. Gold, Adelman & Lavine, Philadelphia, Pa., for appellant.

### MEMORANDUM

LUONGO, District Judge.

This appeal from an order of the Bankruptcy Judge presents an extremely narrow issue that arises on somewhat unusual facts. The Honorable William A. King, Jr., Bankruptcy Judge, ruled that a 1975 order of the bankruptcy court allowing compensation for legal services rendered by counsel for the trustee necessarily encompassed *all* services rendered by counsel prior to September 24, 1974, the date of counsel's application for compensation. Judge King therefore denied a supplemental application that sought compensation for services per-

formed prior to that date, which assertedly were not reflected in the original application. Counsel for the trustee moved for reconsideration, and Judge King reaffirmed his earlier ruling. At that point, counsel took this appeal. For the reasons hereafter stated, I conclude that the decision below gave unnecessarily broad scope to the 1975 order, and I shall remand the supplemental application for further proceedings.

In 1968, a creditor's petition for involuntary proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C. §§ 501–676 (1976), was filed against F. H. McGraw and Company, a construction firm. The Honorable Thomas J. Curtin, Bankruptcy Judge, entered an order converting the involuntary Chapter X proceeding to a Chapter XI arrangement. In 1970, F. H. McGraw and Company was adjudicated a bankrupt. Shortly thereafter, Philip F. Newman was elected as trustee, and Judge Curtin appointed Samuel Marx, Esquire and the firm of Adelman & Lavine as co-counsel for the trustee. The trustee's first and final account was filed on September 24, 1974, and Judge Curtin held the first and final audit hearing on December 10, 1974. The order of final distribution was entered in February of 1975.

Counsel for the trustee filed an application for attorneys' fees and costs on September 24, 1974. Record at 4–22. In their application, counsel stated that they had spent "at least 375 hours" in their representation of Mr. Newman. *Id.* 4. They also supplied, as an exhibit to their application, a description of the services they had rendered. The first seven and a half pages recounted the services performed by Alexander B. Adelman and Marvin Krasny. *Id.* 8–15. The next three pages set forth the services rendered by Nathan Lavine and James W. Adelman. *Id.* 16–18. Finally, the last page and a half detailed the services performed by Lewis H. Gold. *Id.* 19–20. Mr. Gold's services are at issue in this appeal.

At the hearing in December of 1974, Judge Curtin considered (and later approved) this application. None of the credi-

tors voiced any objection to counsel's request for compensation. During the hearing, the following colloquy took place between Marvin Krasny, Esquire, of Adelman & Lavine, and Judge Curtin:

"Mr. Krasny: That covers all the applications. I might point out to Your Honor for purposes of the record, the one remaining, there is one remaining possible asset in the McGraw matter. There was a pension fund which may have an equity in it. Your Honor will recall Mr. Gold of our office handled this matter and has employed a firm to help locate the possible parties under this pension plan and to make a valuation of the benefits that could be paid to these people, and it will take another possibly six to eight months for this investigation to be completed.

The Court: Is there any reason why the creditors should have to postpone this?

Mr. Krasny: No, sir. I am saying to Your Honor that under the new rules that if a fund is realized from this pension plan we can always petition Your Honor to reopen the case for distribution, and there is no need to hold up the creditors. That is why we filed the account.

The Court: After all, the pension [*sic*] was filed in this case—

Mr. Krasny: It is a 1968 case.

The Court: Yes, the first proof of claim came in January of 1969."

N.T. 21–22.

Immediately before the hearing concluded, this additional colloquy occurred:

"The Court: The only one still open is the question of the pension fund that you talked about.

Mr. Krasny: Yes, sir; and we feel under the rules since we can reopen the matter before Your Honor—

The Court: Yes, if you get any additional moneys you can always reopen it."

*Id.* 28.

On February 20, 1975, Judge Curtin entered an order of final distribution that apparently allowed compensation for all the services recited by counsel. Although coun-

sel, in taking this appeal from Judge King's recent order, designated Judge Curtin's 1975 order for inclusion in the record on appeal, Record at 86, that order does not appear in the record that Judge King transmitted to the Clerk of this Court. *See generally* Fed.R.Bankr.P. 806, 807.

After counsel filed their original application in September of 1974, the firm of Adelman & Lavine continued its efforts to obtain money from the pension plan in order to benefit the estate. In October of 1975, Judge Curtin entered an order recognizing that the trustee was entitled to a distribution from the bankrupt's pension trust fund, and directing the pension fund trustee to pay over the balance in the fund. The pension fund trustee, however, resisted payment, and in February of 1977, Judge King, to whom the case had been reassigned, ordered the pension fund trustee to pay approximately $127,000.00 from the trust fund to the trustee in bankruptcy. This order was obeyed.

On July 13, 1977, Adelman & Lavine filed a supplemental application for allowance of attorneys' fees. Record at 23–29. They asserted that they had devoted 138.88 hours to representation of the trustee in bankruptcy, 111.50 hours of which were directed at obtaining the sum of $127,993.66 from the bankrupt's pension trust fund. In this supplemental application, Adelman & Lavine stated that their original application for compensation, filed in September of 1974, "did not include any services relating to the termination of and distribution from the bankrupt's pension plan." Record at 23. They also provided a fourteen-page description of the services for which compensation was sought. Eleven pages of this document were taken up with a recitation of the 111.50 hours that Lewis H. Gold, of Adelman & Lavine, had devoted to the pension fund issue between April 20, 1970 and March 7, 1979. *Id.* 27–37.

Judge King held the supplemental final audit hearing on October 7, 1977. He noted that Adelman and Lavine sought a fee of $25,000.00 as compensation for the 138.88 hours they had devoted to representation of the trustee in bankruptcy. None of the creditors voiced any objection to this application. At the hearing, Mr. Gold described his work on behalf of the trustee as follows:

"The pension plan, upon review and examination of the plan itself and some actuarial determinations we felt might possibly be overfunded. The question then became, assuming it was overfunded, to whom would the overfunded portion belong? That is to say, Did it revert to the company, and by reason of that to the trustee? Or, were the participants entitled to the overage on a pro rata basis. Both of those issues were troublesome, as I am sure Your Honor can appreciate, in view of the pension reform legislation."

N.T.17.

At the close of the hearing, Judge King stated that he would take counsel's supplemental application under advisement. *Id.* 24.

In a letter to Mr. Gold, dated November 1, 1977, Judge King noted:

"We are now in the process of reviewing the Application of your Firm for a Supplemental Fee in this case. We have noted with satisfaction that it was largely through your efforts that this additional asset has been preserved for the Estate and is now available for distribution.

It would aid us greatly in our consideration of a fair and equitable fee in this matter, if you could provide us with the particulars of the services rendered that were covered by your fee application of September 24, 1974."

Record at 41.

Mr. Gold replied, by letter dated November 8, 1977:

"We have reviewed our original Application which was prepared in September of 1974, and which dealt with services rendered to August 31, 1974. I have discussed the matter with Marvin Krasny, Esquire, who actually prepared the original Application based upon the work performed by the various members of our firm who participated in the representation of the Trustee in these proceedings.

During most of the period covered by the original Application, it was not the custom in this District to maintain precise time records to be furnished to the Court in support of Applications for compensation by counsel for the Trustee in Bankruptcy. At that time, the hours spent were determined, among other things, from a review of the file at the time the Application for compensation was filed. In this case, Mr. Krasny reviewed the file, and discussed with Messrs. Lavine, James Adelman and me the services which were rendered on behalf of the Trustee to August 31, 1974. Mr. Krasny advised me that the records indicate that of the total 375 hours reflected on the original Application for Compensation, approximately 20 hours were attributed to my services in connection with the Bankrupt's Pension and Profit Sharing Plans.

These 20 hours are less than the time set forth in the exhibit to our Supplemental Application for the period to August 31, 1974 because the time allocated to my efforts during the period covered by the original Application was merely an estimate, and it was not our intention to then seek full compensation for the services rendered in connection with the Pension and Profit Sharing Plans but, rather, to request compensation at some later date from the proceeds which we might recover for the benefit of the estate from the Pension and Profit Sharing Plans. Thus, although the Supplemental Application shows that I spent 76 hours from April 20, 1970 to September 3, 1974 in connection with this matter, all of this time was not included in our original Application, but only approximately 20 hours of my time was included in the original Application."

Record at 42–43.

On December 15, 1977, Judge King entered an order directing counsel for the trustee to amend their supplemental application "to reflect in detail the dates, hours and nature of the professional legal services rendered" both before and after December 10, 1974, the date on which Judge Curtin held the first and final audit hearing. Record at 47.

Counsel filed their amended supplemental application on December 22, 1977. In this submission, Adelman and Lavine stated that their original application had "erroneously" included 20 hours of work performed by Mr. Gold between April of 1970 and October of 1973. Record at 49. Thus, counsel reduced the total number of hours for which compensation was still sought from 138.88 to 118.88, although the total amount of compensation sought remained at $25,000.00. *Id.* 50. Of these 118.88 hours, 91.50 represented work done by Mr. Gold, while the balance reflected work done by another attorney at Adelman & Lavine. Of the 91.50 hours that Mr. Gold devoted to representation of the trustee, 55 hours corresponded to work done before September 24, 1974—the date of counsel's first application for compensation—and 36.50 hours reflected work done after that date.

Mr. Gold then sent Judge King a letter, dated January 12, 1978, in which he offered a more detailed explanation:

"In 1974 it was decided to make a distribution to creditors although we had not completely liquidated the estate since we anticipated additional funds from the Pension Plan. It was felt that creditors should receive whatever dividend was then available, and that any additional funds coming into the estate could be the subject of a Supplemental Order of Distribution. Since we expected a further distribution after receipt of the funds from the Pension Plan we did not believe it was appropriate to include in our original request for compensation all of the services which we rendered in connection with the anticipated receipt of substantial funds from the Pension Plan. We did not believe that the first dividend to creditors should be reduced by services rendered with respect to a specific matter which would eventually result in the receipt of additional funds and a further distribution to creditors. We felt that these particular services (except for the relatively small number of hours included in the original Application) would be best con-

sidered at the time the funds were received and distributed so that the Court could take into account the nature and extent of the benefit conferred upon the estate by our efforts. This, of course, could not be done until after the matter was finalized and the money received. . . . The services for which we have requested compensation in our Supplemental and Amended Supplemental Applications were not the subject of any previous request for compensation since we have now eliminated the only duplication; namely, the twenty hours included in the original Application."

*Id.* 56.

Judge King held a hearing on the matter on March 8, 1978. During this hearing, Mr. Gold testified that Judge Curtin's order allowing compensation for a total of 375 hours did not encompass 55 hours of work that Mr. Gold did on the pension fund issue prior to September 24, 1974, because counsel's original application for compensation did not include those hours in the total figure of 375 hours. Judge King repeatedly expressed his reluctance to "go behind" Judge Curtin's order, and he stated that he would take the matter under advisement.

In an opinion issued on November 6, 1978, Judge King denied compensation for any work done by Mr. Gold prior to September 24, 1974. Record at 62–72. Judge King wrote: "In the absense [*sic*] of any indication of incompleteness, it must be presumed that a Final Order for allowance of fees cover [*sic*] all services rendered up until the date of the 'Application by Counsel for Fees' which is a part of the Final Audit." *Id.* 66 (footnote omitted). Thus, Judge King allowed Adelman & Lavine $6400.00 as compensation for some sixty-three hours of services performed after September 24, 1974.

Counsel then moved for reconsideration, Record at 73–77, contending that they would now receive no compensation at all for fifty-five hours that Mr. Gold devoted to the pension fund issue prior to September 24, 1974. On February 2, 1979, Judge King issued an opinion in which he adhered to the views expressed in his earlier opinion. Counsel then took this appeal.

■ Judge King's ruling on counsel's supplemental application rested entirely on a legal issue, rather than on any findings of fact. As his opinion demonstrates, Judge King believed that a final order allowing compensation for legal services necessarily encompasses all services rendered up through the date of counsel's application for compensation, unless the order itself states that some portion of those services are excluded. In my view, this proposition is unsound. Generally, of course, such an order *will* include all services performed prior to the filing of counsel's application for compensation. And in an unusual case such as this, the wiser course, as Judge King properly noted, would be for counsel to cause the record to reflect that some of the services rendered prior to their application are not covered by the order allowing compensation. The issue here, though, is whether counsel's failure to pursue that course means that, as a matter of law, Judge Curtin's order must be read to embrace all services performed prior to September 24, 1974. I believe that it does not.

■ When questions arise regarding the interpretation of an order allowing compensation, the most useful approach is surely to examine whatever materials may shed light upon the proper scope of the order. In this case, the 1975 order was plainly premised upon counsel's original application for compensation, which recited that counsel had devoted at least 375 hours to representation of the trustee. Counsel now argues that Mr. Gold had devoted another fifty-five hours to the pension fund issue, over and above the 375 hours claimed in the original application, before counsel filed that application. In order to secure the additional compensation they seek, I believe that counsel must establish to the satisfaction of the bankruptcy judge both (1) that Mr. Gold devoted a total of seventy-five hours (including the twenty hours for which Adelman & Lavine has already been compensated) to the pension fund issue prior to September 24, 1974, *and* (2) that counsel devot-

ed a total of 355 hours (375 hours minus the twenty hours just mentioned) to representation of the trustee, apart from Mr. Gold's work on the pension fund issue, prior to September 24, 1974. I emphasize that these are factual issues. They should be resolved based on the evidence adduced by counsel, and not on the basis of presumptions regarding the scope of Judge Curtin's order. Because the allowance of compensation to attorneys is a non-adversary proceeding, the testimony of Mr. Gold is uncontradicted on the present record. The bankruptcy judge on remand should permit counsel to supplement the record as they may see fit, and he should then make the necessary findings of fact. If he determines that counsel are entitled to compensation for some or all of the fifty-five hours, he should then proceed to consider the appropriate hourly rate for that compensation. The latter issue is not properly before me at this time, although counsel have raised it in their briefs.